IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:18-CV-155-FL

CATHRINE BARRETT; FREDDY       )
JREISAT; and VALOR CAPITOL     )
HOLDINGS, LLC d/b/a United      )
Military Travel,                )
                Plaintiffs,     )
                                )
        v.                      )            ORDER
                                )
USA SERVICE FINANCE, LLC;       )
HEARTLAND CAPITAL               )
INVESTMENTS, LLC;               )
CHRISTOPHER E. BURNETT;         )
DANIEL T. BURNETT; CEB          )
INVESTMENTS, LLC; and           )
GRACELAND PROPERTIES, LLC,      )
                                )
                Defendants.     )


        This matter is before the court on defendants' motions denominated as follows:

1)      Motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure

        12(b)(6) by defendant Graceland Properties, LLC ("Graceland") (DE 15);

2)      Motion to dismiss in part for failure to state a claim pursuant to Federal Rule of Civil

        Procedure 12(b)(6) by defendants USA Service Finance, LLC, ("USASF"); Heartland

        Capital Investments, LLC, ("Heartland"); Christopher E. Burnett ("Christopher Burnett");

        Daniel T. Burnett ("Daniel Burnett"); and CEB Investments, LLC ("CEB") (DE 24);

3)      Motion to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil

        Procedure 12(b)(2), by defendants USASF, Christopher Burnett, Daniel Burnett, and CEB

        (DE 24);

4) Motion to dismiss or, in the alternative, motion to transfer venue to the Western District of Kentucky by defendants USASF, Christopher Burnett, Daniel Burnett, and CEB (DE 26);

5) Motions to quash filed by defendant Graceland (DE 51, 54).

These motions have been briefed fully, and in this posture, the issues raised are ripe for ruling. For the following reasons, the court grants the alternative motion to transfer venue to the Western District of Kentucky and denies the remaining motions.

## STATEMENT OF THE CASE

This action arises out of a failed business relationship between plaintiffs and defendants, who are allegedly closely affiliated entities and individuals. Plaintiffs commenced this action against defendants in Craven County Superior Court on August 7, 2018, asserting the following claims:

1) Seven breach of contract claims arising out of alleged breaches of agreements governing the parties' business relationships (counts 1-5, 9-10);

2) Fraud in the inducement against defendant Christopher Burnett and Daniel Burnett (count 4);

3) Unfair and deceptive trade practices against defendant Christopher Burnett and Daniel Burnett (count 5);

4) Conversion (in the alternative to fraud in the inducement) against defendant USASF (count 8);

5) Promissory estoppel/quantum meruit/unjust enrichment (in the alternative to breach of contract) (count 11);

6) Piercing the corporate veil and alter ego liability, against defendants USASF, Heartland, Christopher Burnett, Daniel Burnett, CEB, and Graceland (count 12).

Plaintiffs seek compensatory damages, treble damages, punitive damages, attorneys' fees, costs, interest, and jury trial.

Defendants removed to this court on September 7, 2018, on the basis of diversity jurisdiction.[1] On September 11, 2018, defendant Graceland filed the instant motion to dismiss for failure to state a claim, arguing that plaintiffs have not pleaded facts sufficient to support a claim for "reverse piercing" of the corporate veil (count 12) to hold defendant Graceland liable for the conduct of defendant Daniel Burnett. (Mem. (DE 16) at 10).

On October 5, 2018, all defendants except Graceland filed the instant motion to dismiss in part for failure to state a claim, which motion seeks dismissal of plaintiffs' claim piercing the corporate veil (count 12). Defendants Christopher Burnett and Daniel Burnett also seek dismissal of plaintiffs' claim against them for fraud in the inducement (count 7). At the same time, all defendants except Graceland and Heartland filed the instant motion to dismiss for lack of personal jurisdiction. In support thereof, these defendants rely upon declarations of Christopher Burnett and Daniel Burnett. Heartland also filed an answer to the complaint.

On the same date, all defendants except Graceland and Heartland filed the instant motion to dismiss or, in the alternative, to transfer the case to the United States District Court for the Western District of Kentucky, arguing that dismissal or transfer is warranted due to the "First-Filed Rule" and 28 U.S.C. §§ 1404, 1406, and 1631. In support thereof, they rely upon a complaint filed in the Western District of Kentucky, in Paducah, Kentucky, on July 19, 2018, in the case captioned USA Service Finance, LLC v. Barrett, et al., No. 5:18-CV-110-TBR (W.D. Ky.) (hereinafter the "Kentucky case").

---

[1] Defendants Christopher Burnett, USASF, Heartland, and CEB, removed with consent of defendants Daniel Burnett and Graceland.

On October 19, 2018, plaintiffs filed a response in opposition to defendant Graceland's motion to dismiss. On October 26, 2018, plaintiffs filed a response in opposition to the remaining motions to dismiss and the alternative motion to transfer. In opposition to the motion to dismiss for lack of personal jurisdiction, plaintiffs rely upon a declaration by plaintiff Cathrine Barrett ("Barrett"). In opposition to the motion to dismiss or transfer, plaintiffs rely upon the same as well as documents filed in the Kentucky case.

Defendant Graceland replied in support of its motion on November 2, 2018. The remaining defendants replied in support of their motion to dismiss for lack of personal jurisdiction and in part for failure to state a claim on November 16, 2018, relying upon a second declaration of defendants Christopher Burnett and Daniel Burnett. These defendants, except for Graceland and Heartland, filed a reply in support of the venue motion, relying upon the same second set of declarations.

Upon leave of court, plaintiffs filed a sur-reply in opposition to the venue motion, relying upon emails between plaintiff Barrett and defendants Christopher Burnett and Daniel Burnett.

On February 13, 2019, defendant Graceland filed a motion to quash subpoenas served upon John H. Stevens, IberiaBank, Wesbanco Bank, Inc., and Robert S. Wainwright, on the basis that they seek information irrelevant to the claims against Graceland, and on the basis that an additional protective order is required. On February 26, 2019, defendant Graceland filed a motion to quash subpoenas served on John Carr; Jonathan Kennemore; Clayton, Byrd, & Meeks LLP; and Citizens Deposit Bank of Arlington, Inc., on the same grounds. Plaintiffs have responded in opposition to the motions to quash.

## STATEMENT OF FACTS

A.     Complaint

Plaintiff Barrett is a citizen of Craven County, North Carolina, and the President and sole owner of plaintiff Valor Capital Holdings, LLC ("Valor"), a Virginia company with principal place of operations in Craven County, which "offers travel planning, booking, and financing for military members and other government personnel." (Compl. ¶ 22). Plaintiff Valor does business as United Military Travel. Plaintiff Freddy Jreisat is a citizen of Craven county and an employee of Valor.

Defendant Christopher Burnett is a citizen and resident of Graves County, Kentucky. He holds a 50% ownership stake in defendant USASF, a company with principal place of business in Mayfield, Kentucky, which "purchases loans offered to military, retired military, and government employees to pay for travel and accommodations." (Id. ¶ 13).

Defendant Christopher Burnett also owns defendant Heartland, a company with principal place of business in Mayfield, Kentucky, and registered to do business in North Carolina, which "manages lending leases for multiple investors, manages military travel contracts, and also pays payroll for employees of affiliated entities, including USASF." (Id. ¶ 14). He is the managing member of USASF and Heartland. He also owns defendant CEB Investments, LLC, a company with principal place of business in Mayfield, Kentucky.

Defendant Daniel Burnett is a citizen and resident of Carlisle County, Kentucky. He holds a 50% ownership stake in USASF, and he owns defendant Graceland, a company with principal place of business in Carlisle County, Kentucky.

Plaintiffs summarize the core operative facts in the complaint as follows:

2.       In 2015, Defendants Christopher and Daniel Burnett turned to Plaintiff Cathrine Barrett for help. Their loan servicing company—USA Service Finance, LLC ("USASF")—was failing.   USASF bought loans at a discount and collected the premiums paid over time by borrowers. But Christopher and Daniel Burnett did not know how to manage the enterprise.  They did not know how to identify borrowers who would repay or how to avoid borrowers who would default.  They did not know how to service and collect payments on the loans to maximize recovery. As a result, USASF was facing delinquencies far in excess of industry norms and the company was in financial turmoil.

3.       Aware they needed help, Christopher and Daniel Burnett turned to Cathrine Barrett. They discovered in her someone talented, someone experienced in the industry, and someone able to execute and deliver success.

(Compl. ¶¶ 2-3).  Plaintiffs summarize the work plaintiff Barrett was asked to perform as follows:

5.       The Defendants hired Ms. Barrett in late 2015 to help develop USASF's underwriting and loan servicing platform.  But because she was so skilled, the Defendants consistently asked her to do more.  They asked her to train USASF's employees how to service the loans.   They asked her to help respond to an investigation by the Consumer Finance Protection Bureau ("CFPB").  They asked her to help negotiate terms with their bank. They asked her to help solve their accounting crises.  And they asked her to help solve USASF's liquidity crisis—including by contributing her own assets to their balance sheet.  In the end, they misappropriated her assets and tried to leverage her property for their own gain.

(Compl. ¶ 5).

Plaintiffs summarize key agreements and contracts bearing on the relationships between the parties as follows:

> 6.    Ms. Barrett was willing to help, as long as she was fairly compensated for her efforts. The parties signed a Master Agreement in October 2015 relating to the establishment and maintenance of the underwriting software (the "Master Agreement"). By early 2016, it was clear that USASF needed her to do more than was contemplated by the Master Agreement. The parties thereafter negotiated an Independent Consulting Agreement, pursuant to which Ms. Barrett would be compensated at an annual salary of $150,000 to provide additional assistance to USASF. By the end of 2016, it was clear USASF required so much time and attention that the annual salary was insufficient. The parties then agreed that Ms. Barrett and her employee, Freddy Jreisat, would be compensated on an hourly basis. They also executed an Employee Lease Agreement, pursuant to which Ms. Barrett's company, Plaintiff Valor Capital Holdings, LLC ("Valor") would provide employees to help manage USASF's business.

(Compl. ¶ 6).

Plaintiffs summarize key alleged conduct of the parties as follows:

7.    With each request for additional assistance, the Defendants promised to pay Ms. Barrett for her services. She consistently delivered, but the Defendants failed to live up to their end of the bargain. They never paid Ms. Barrett any commissions owed under the Master Agreement. They did not pay Ms. Barrett her full salary in 2016. And they owe over $100,000 for hourly work performed since January 2017.

8.    By 2018, Ms. Barrett had dedicated so much time, effort, and attention to USASF that she was invested in its success. Christopher and Daniel Burnett exploited her commitment too. With USASF facing a liquidity crisis, they convinced Ms. Barrett to cause Valor subsidiary United Military Travel[1] to contribute almost one million dollars in retail installment contracts to USASF. They told Ms. Barrett they would repay her for the assets and also grant her equity in the company. Valor contributed the assets, but the Defendants neither repaid Valor for the assets nor made Ms. Barrett an owner of the business. Instead, the Defendants sought to leverage their position as Valor's sole financier to eliminate the industry's most established travel finance company. To add insult to injury, the Defendants are using Valor's own assets to fund their competing business. USASF continues to hold the loans Valor contributed.

9.    The Defendants now owe Plaintiffs over a million dollars in compensation and capital. They have refused to pay. Through this action, Plaintiffs compel them to do so.

(Compl. ¶¶ 7-9).

Additional factual allegations and assertions in the complaint will be set forth in the court's discussion herein.

B.    Kentucky Case

In the Kentucky case, on July 19, 2018, USASF filed complaint against Barrett, Jreisat, and Valor (hereinafter, also, the "Kentucky defendants") also arising out of the failed business relationship between the parties. USASF asserts claims for defamation, unlawful access to a computer, misuse of computer information, conversion, breach of fiduciary duty, respondeat superior liability, and unjust enrichment.  The facts alleged in the complaint in the Kentucky case cover the relationship between the parties, beginning with discussions in 2015, for Barrett "to assist USASF with lowering the delinquency rate to below 9% of loans"; entry into the "Master Agreement"; and an agreement to pay Barrett an hourly rate for her work.  (Kentucky Compl. ¶¶ 12-19).

The Kentucky complaint alleges that "USASF . . . entrusted [Barrett] to handle a portion of the finances within USASF" and "[d]ue to [Barrett's] mismanagement, lack of supervision, and failure to properly train employees, USASF became out of compliance with the terms of its line of credit."  (Id. ¶¶ 22-23).  It also alleges that Barrett "proposed to transfer loans originated by Valor Capital to USASF and not seek payment until USASF was back in compliance with the terms of the line of credit in order to improve USASF's finances."  (Id. ¶ 25).

The Kentucky complaint alleges that Barrett "sought to buy out Daniel Burnett's interest in USASF," but "[a]fter learning she would be unable to purchase Daniel Burnett's interest in USASF, [plaintiff] Barrett launched an attack on USASF."  (Id. ¶ 28).  According to the Kentucky complaint, this "attack" included conduct such as failing to initiate in mid-June 2018 a "payment run, causing USASF to miss out on payments due to it"; taking down USASF's website and replacing it with a notice that USASF was closed for nonpayment; shutting down USASF's email service; accessing

computers to destroy documents; making statements to a bank, a government agency, and customers and business partners.  (Id. ¶¶ 29-37).

In the Kentucky case, the Kentucky defendants Barrett, Jreisat, and Valor, filed a motion to dismiss for lack of jurisdiction and improper venue and for failure to state a claim, on September 10, 2018.  (Kentucky case DE 6).  They also filed on the same date a motion to transfer the case to this court, (id. DE 11), amended with leave of court on October 26, 2018.  (Id. DE 23).  USASF filed responses in opposition to the motion to dismiss and to transfer, and Kentucky defendants Barrett, Jreisat, and Valor, filed replies.  (Id. DE 25-28).  USASF filed in the Kentucky case on November 6, 2018, a motion for leave to file sur-reply in opposition to the motion to transfer.  (Id. DE 24).  By agreed order, the court allowed USASF to file a sur-reply, and the Kentucky defendants Barrett, Jreisat, and Valor, to file a rebuttal, which they filed on February 27, 2019.  (Id. DE 27, 29, 31).  In the meantime, in the Kentucky case, USASF filed a motion for leave to amend complaint on October 25, 2018, and briefing on that motion completed November 26, 2018.   (Id. DE 21, 25, 28).[2]

Additional facts and assertions regarding the parties' interactions and litigation history as it relates to venue will be set forth in the court's discussion herein.

## COURT'S DISCUSSION

A.      Venue

In light of the pendency of the Kentucky case, which was filed before the instant case, the court begins with discussion of venue and the motion to dismiss, or in the alternative, to transfer to the Western District of Kentucky.

---

[2] In the docket in the instant case, plaintiffs attach to their response (DE 32) in opposition to motion to dismiss or transfer five documents filed in the Kentucky case.  For the sake of completeness, the court refers above directly to the documents as filed on the docket in the Kentucky case.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Venue is proper in–

> 1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> 2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

> 3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

A transfer of venue under § 1404(a) is "a matter resting in the sound discretion of the District Judge." S. Ry. Co. v. Madden, 235 F.2d 198, 201 (4th Cir. 1956). Under the "first-to-file" rule adopted by the Fourth Circuit, "[i]t has long been held . . . that, as a principle of sound judicial administration, the first suit should have priority, absent the showing of balance of convenience in favor of the second action." Ellicott Mach. Corp. v. Modern Welding Co., 502 F.2d 178, 180 n. 2 (4th Cir. 1974) (quoting Remington Prod. Corp. v. Am. Aerovap, 192 F.2d 872, 873 (2d Cir. 1951)); see Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 594 (4th Cir. 2004) (quoting Ellicott, 502 F.2d at 180 n.2).

The first-filed rule applies in cases where "a prior suit [is] pending in which all issues could be tried with equal facility." Carbide & Carbon Chemicals Corp. v. U.S. Indus. Chemicals, 140 F.2d 47, 49 (4th Cir. 1944); see Remington Prod. Corp., 192 F.2d at 873 (applying rule to first-filed case where "[a]ll the issues are, or can be, there joined"). Accordingly, to confirm applicability of the first-filed rule, this court, and other district courts in this circuit, consider "1) the chronology of the

filings, 2) the similarity of the parties, and 3) the similarity of the issues at stake." Berger v. United States Dep't of Justice, No. 5:16-CV-240-FL, 2016 WL 3620752, at *8 (E.D.N.C. June 29, 2016); see, e.g., Dillon v. BMO Harris Bank, N.A., 16 F. Supp. 3d 605, 617 (M.D.N.C. 2014); Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F. Supp. 2d 357, 360 (W.D.N.C. 2003).

Provided the first-filed rule applies, the court then must determine whether there is a "balance of convenience in favor of the second action." Ellicott, 502 F.2d at 180 n. 2. In determining the balance of convenience, the court looks to traditional venue factors such as: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015). The Supreme Court has expressed these factors in more detail as follows:

> Factors relating to the parties' private interests include relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law. The Court must also give some weight to the plaintiffs' choice of forum.

Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 63 (2013). Furthermore, "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." Id. at 64.

1. Application of first-filed rule

In this case, the first-filed rule applies. The chronology of the filings favors application of

the rule, where the instant complaint was filed in Craven County, North Carolina on August 7, 2018, whereas the first-filed complaint was filed in the Western District of Kentucky on July 19, 2018. The similarity of the parties favors application of the rule, where all plaintiffs in the instant case are defendants in the Kentucky case, where the primary defendant USASF is the plaintiff in the Kentucky case, and where additional defendants in the instant case are all alleged to be alter egos of or closely affiliated entities of defendant USASF. Finally, the similarity of issues also favors application of the rule, where the claims in each case arise out of the same failed business relationship between the parties.

Plaintiffs argue nonetheless that the first-filed rule does not apply under the circumstances of this case. With respect to chronology, plaintiffs argue that a 19 day time difference is too short to give rise to the rule. Plaintiffs cite to Harris v. McDonnell, No. 5:13CV00077, 2013 WL 5720355, at *4 (W.D. Va. Oct. 18, 2013), for the proposition that "a rigid application of the first-to-file rule is unwarranted when the second action was filed only weeks after the first action." In Harris, however, the court considered it significant that the pending case, although chronologically second filed, was still "the first-filed as to the issue of recognition of same-sex marriages performed by sister states," introduced by an amended complaint. Id. The court recognizes that 19 days is a relatively short time period separating the two actions, but the court declines to find this factor determinative to application of the first-filed rule, where the timing requirement of the rule is straightforward.

Plaintiffs also argue that the differences between the parties and the issues raised by the claims preclude application of the first-filed rule. With respect to the parties, however, all defendant individuals and entities present in the instant case allegedly share an identity, as a matter of law,

with defendant USASF, in turn allowing USASF to commit wrongs against plaintiffs. For example, plaintiffs assert: "Christopher and Daniel Burnett exercise such complete domination and control over USASF and Heartland that the companies have no independent identity, mind, will, or existence." (Compl. ¶ 185). The few stand-alone claims against Heartland, Christopher Burnett, and Daniel Burnett also directly implicate USASF as asserted "third-party beneficiary" and as recipient of fraudulently induced transfers. (Id. ¶¶ 137, 141, 148).

With respect to the issues, although the instant case raises more claims and allegations as to conduct by defendants that wronged plaintiffs, all the claims and issues arise out of the same failed business relationship. While plaintiffs contend that the Kentucky case "centers on a few discrete actions Ms. Barrett and Mr. Jreisat allegedly took in the few days after the parties had parted ways," the alleged conduct took place in mid-2018, immediately after Barrett transferred loans to USASF and sought unsuccessfully "to buy out Daniel Burnett's interest in USASF," (Kentucky Case, Compl. ¶ 27), which is a key course of conduct in the instant action pertinent to multiple claims. (See Compl. ¶¶ 90-109, 144, 150, 152, 156). The timing of alleged wrongful conduct on both sides is nearly simultaneous. (Compare Compl. ¶ 90 (between March 8, 2018 and June 13, 2018) with Kentucky Compl. ¶ 29 ("failed to initiate the mid-June, 2018 payment run")). Moreover, the Kentucky case asserts a claim of unjust enrichment that seeks recovery of advances made to Barrett under the Master Agreement back to 2015. (Kentucky Compl. ¶¶ 97-104).

Plaintiffs also argue that an exception to the first-filed applies because the Kentucky case is an "anticipatory" suit. (Pls' Mem. (DE 32) at 16).[3] As an initial matter, "[t]he Fourth Circuit has

---

[3] Page numbers in citations to briefs and other documents in the record, unless otherwise specified, correspond to the page numbers showing in the court's electronic case filing system (e.g., in the citation above, page 16) and not the page showing on the face of the underlying document (e.g., in the underlying document cited above, page 10).

not stated explicitly that special circumstances may warrant an exception to the first-filed rule." Learning Network, Inc. v. Discovery Commc'ns, Inc., 11 F. App'x 297, 301 n.2 (4th Cir. 2001). In any event, considering the totality of the circumstances here, the court finds that the Kentucky case is not an "anticipatory" suit to such a nature or degree to preclude application of the first-filed rule. It is undisputed that the Kentucky case was filed after a settlement offer from plaintiffs had expired. (Barrett Decl. ¶¶ 27-28). In this respect, this case is distinguishable from those deemed anticipatory where a suit is filed in the midst of settlement negotiations. See, e.g., Nutrition & Fitness, Inc. v. Blue Stuff, Inc., 264 F. Supp. 2d 357, 361 (W.D.N.C. 2003) (stating that first-filed rule disputes "generally involve some settlement negotiations between the parties, whereupon one of the parties files a lawsuit without serving the other party, all the while continuing negotiations").

Plaintiffs reference cases with "concrete indications that a suit by the [second-filing party] was imminent," or "about to file." CompuZone, Inc. v. Top Tobacco, L.P., No. 3:14-CV-04790-CMC, 2015 WL 12804523, at *6 (D.S.C. May 5, 2015); Remington Arms Co. v. Alliant Techsystems, Inc., No. 1:03CV1051, 2004 WL 444574, at *3 (M.D.N.C. Feb. 25, 2004). However, those two cases, for example, involved first-filed declaratory judgment complaints. Id. In addition, plaintiffs here do not demonstrate such explicit indications of imminency here, where plaintiffs do not include their demand or settlement letters in the record. (See Barrett Decl. ¶¶ 25-28). Finally, although plaintiffs challenge the viability and merit of the Kentucky case claims and its avoidance of a North Carolina forum, for the reasons stated below with respect to convenience factors, Kentucky is an acceptable forum for both cases. Therefore, the could declines to apply here an "anticipatory" suit exception to the first-filed rule.

In sum, while the court recognizes there are differences in the structure and procedural

posture of the instant case and the Kentucky case, these differences are not sufficient to overcome application of the first-filed rule. As such, it "should have priority, absent the showing of balance of convenience in favor of the second action." Ellicott, 502 F.2d at 180 n. 2. The court turns next to those factors.

2.    Balance of convenience

Considering all the circumstances of the Kentucky case and the instant case, plaintiffs have not demonstrated a balance of convenience in favor of the instant case.

Regarding plaintiffs' choice of venue, because both cases are ongoing, the interests of the plaintiffs in both cases in their chosen venue are balanced neutrally, at best. It is also notable in this regard that there are a greater number of parties favoring venue in Kentucky.

Regarding witness convenience and access, it is significant that Kentucky is the location of all of the defendants in the instant case and their principal place of operations. (Compl. ¶¶ 13-18). In addition, Kentucky is the location where a significant portion of the work subject of the claims took place. Indeed, the complaint alleges the following:

1)     "Over the course of her work for the Defendants, Ms. Barrett spent at least 82 days in Kentucky or traveling on behalf of USASF." (Compl. ¶ 53).

2)    At one point, plaintiff Barrett "flew to Kentucky for a week with two of her managers to assist with [proper loan servicing] training." (Id. ¶ 51) (emphasis added).

3)    "By October 2016, [plaintiff] Barrett and [plaintiff] Jreisat had spent collectively over two months living out of various hotels in Kentucky to provide services to USASF." (Id. ¶ 55).

4) "Christopher and Daniel Burnett flew [plaintiff] Barrett to USASF's Mayfield, Kentucky, headquarters from April 10 through April 12, 2018 to negotiate a deal rewarding [plaintiff] Barrett for her hard work and dedication." (Id. ¶ 88).

The complaint further emphasizes the extensive work plaintiff Barrett performed in a wide range of capacities for defendants: "rebuild USASF's loan documents, reconcile USASF's accounting, hire an IT team, generate HR documentation, make schedules, file for lending licenses, meet with investors, purchase equipment, pursue refunds for legal expenses, and collect debts for other companies." (Compl. ¶ 50). The complaint in the Kentucky case further emphasizes the breadth of plaintiff Barrett's responsibilities: "USASF entrusted Mrs. Barrett with vital operations within the business of USASF, including collecting monthly and bi-monthly payments from customers, training staff, and holding discussions with USASF's bank for making payments on USASF's line of credit." (Kentucky case Compl. ¶ 85).

Moreover, many of the issues raised in the instant case regarding breach and injury turn on defendants' Kentucky business operations. For example, plaintiffs assert that plaintiff Barrett's compensation was "contingent on the delinquency rate" of loans processed by USASF, (see Compl. ¶ 39), thus requiring analysis of USASF business records and operations for the time period in question. Amounts due under the Employee Lease Agreement similarly were tied to "three percent (3%) of the collection amounts collected by the employees of Valor leased to Heartland." (Compl. ¶ 74). Defendants allegedly agreed that if plaintiff Barrett "would contribute receivables to USASF, they would repay her in full as soon as they could draw again on the line of credit." (Compl. ¶ 84). Plaintiffs also allege, "[r]ather than pay the Plaintiffs what they owe, the Defendants instead have

purchased and acquired additional travel loans for Military Flight Travel, the company they bought to compete directly with Valor." (Compl. ¶ 113).

The combination of all these allegations confirm that, for witness convenience and access, including practical considerations of obtaining witness attendance and gathering evidence, the balance favors Kentucky. The same considerations weigh in favor of convenience of the parties in Kentucky versus North Carolina.

Plaintiffs contend, nonetheless, that a significant amount of plaintiff Barrett's work took place in North Carolina on behalf of defendants, and that witnesses and evidence related to plaintiffs' work are located in North Carolina. Plaintiffs note, for example, the North Carolina residency of several current and former employees of Valor, and they contend that such witnesses "can only be compelled to testify at trial at trial in the Eastern District of North Carolina." (Pls' Mem. (DE 32) at 17). The court does not discount the substantial amount of evidence and witnesses with locus in North Carolina. But, the court considers this fact at best neutral for venue analysis because 1) the witnesses cited are plaintiffs' own current and former employees (see Barrett Decl. ¶¶ 12, 16), and 2) the burden to compel them to testify outside of their home district is no harder than it would be for defendants to compel their own witnesses to testify outside of their home district. In sum, considering all the circumstances, in light of the amount and breadth of witnesses and evidence also in Kentucky, practical witness considerations do not weigh in favor of venue in this district.

With respect to other convenience and access issues, it is significant that personal jurisdiction over the parties in Kentucky is not an issue, whereas it presents a substantial problem raising complex issues regarding certain defendants in North Carolina. Particularly regarding defendants

Graceland, CEB, and Daniel Burnett, who are not alleged to have engaged in any conduct in North Carolina, personal jurisdiction turns on piercing the corporate veil and alter ego theories, which are difficult and exceptional grounds upon which to base liability and personal jurisdiction.[4] Indeed, the North Carolina Supreme Court has noted: "[P]roceeding beyond the corporate form is a strong step: 'Like lightning, it is rare and severe,'" and "There is a consensus that the whole area of limited liability, and conversely of piercing the corporate veil, is among the most confusing in corporate law." State ex rel. Cooper v. Ridgeway Brands Mfg., LLC, 362 N.C. 431, 439 (2008). While the court does not base the instant venue decision on a definitive determination of lack of personal jurisdiction over all defendants, cf. 28 U.S.C. §§ 1406(a) & 1631, it is nonetheless significant to the balance of convenience factors for purposes of 28 U.S.C. § 1404(a) that personal jurisdiction is more problematic here than in Kentucky.

Plaintiffs argue that forum selection clauses in the alleged Independent Consulting Agreement (Compl., Ex. C) and Employee Lease Agreement (Id., Ex. D) require or strongly weigh in favor of venue in North Carolina. These asserted forum selection clauses, however, are not determinative of the balance of convenience for several reasons. First, the asserted forum selection clause in the Independent Consulting Agreement is not enforceable, as a matter of law, because there was no meeting of the minds as to the inclusion of any forum selection term. To constitute a valid contract, "the parties must assent to the same thing in the same sense, and their minds must meet as to all the terms." Boyce v. McMahan, 285 N.C. 730, 734 (1974); see Horton v. Humble Oil & Refining Co., 255 N.C. 675, 679 (1961) ("[I]t is necessary that the minds of the parties meet upon a definite proposition. There is no contract unless the parties thereto assent, and they must assent

---

[4] Although Graceland does not move to dismiss for lack of personal jurisdiction, it does move to dismiss the piercing of corporate veil claim against it, thus raising the same issue.

to the same thing, in the same sense.").

Here, the Independent Consulting Agreement that is attached to the complaint includes a governing law and venue provision that states: "This Agreement shall be construed and enforced under and in accordance with the laws of the State of North Carolina. Venue for any action, whether at law or in equity, shall be in Craven County, North Carolina."  (Compl. Ex. C (DE 1-1) at 61). However, this document is not executed by any party.  The complaint twice expressly alleges that "Christopher and Daniel Burnett refused to sign the Independent Consulting Agreement."  (Id. ¶¶ 58, 62).  Although plaintiffs allege generally in the complaint that they "nonetheless agreed to be bound by its terms," there are no facts in the complaint permitting an inference that they agreed to be bound by "all the terms," Boyce, 285 N.C. at 734, including specifically the venue provision.

Evidence submitted in conjunction with the venue motion confirms there was no meeting of the minds regarding the venue provision in the Independent Consulting Agreement.  Indeed Christopher and Daniel Burnett expressly state that there was not a meeting of the minds on this term, but rather that they specifically proposed a contrary provision stating that any dispute arising out of the agreement would have venue "in Graves County, Kentucky."  (E.g., Christopher Burnett Decl. ¶ 5; Ex 1).  This is remarkable not only in showing a lack of meeting of the minds, but also in showing that defendants expressly intended at the time of the alleged contract to have any disputes resolved in Kentucky, thus further supporting a balance of convenience in favor of Kentucky.

In sur-reply, plaintiffs introduce further evidence of the parties' negotiations over a consulting agreement that only further calls into question a meeting of the minds over the venue provision.  In a December 12, 2016, email, defendant Chris Burnett states to plaintiff Barrett that

they "are more than happy to pay [Barrett] the $37,000 on a quarterly basis," but that Daniel Burnett "believes the situation is becoming complicated and <u>is not willing to sign the new agreement</u> . . . . [W]e cannot just sign anything that is put in front of us. With this being said, let's move forward." (Sur-reply, Ex. B (DE 46-2) at 3-4) (emphasis added). Plaintiff Barrett responds, in part: "I will finish out the work for this quarter, but moving forward I don't want to continue doing these duties. We will stick to the original agreement." (<u>Id.</u> at 2). In sum, the alleged Independent Consultant Agreement does not contain an enforceable venue provision.

Second, although the Employee Lease Agreement is an executed contract that contains a provision for venue in Craven County, North Carolina, the Employee Lease Agreement is limited in scope and it does not cover all the parties and issues presented in the instant case. Indeed, the Employee Lease Agreement provides for the lease of one Valor employee, Crystal Cox, to Heartland Capital at an hourly rate of $14.00 per hour. (<u>See</u> Compl. Ex. D (DE 1-1) at 63-67). This agreement forms the basis of a limited subset of claims in the complaint, for breach of this agreement and unjust enrichment based upon the same facts. While plaintiffs assert that USASF is an intended third party beneficiary of the agreement (Compl. ¶ 137), the venue provision in the Employee Lease Agreement nonetheless is not one that applies to "all disputes between the parties." <u>Atl. Marine Const. Co.</u>, 571 U.S. at 53. Thus, it is not a venue provision that requires the court to disregard traditional balance of convenience factors. <u>Id.</u> at 64.

Finally, the language in the venue provision in the asserted Independent Consulting Agreement (Compl. Ex. C) and the Employee Lease Agreement (Compl. Ex. D) does not demonstrate an intent of the parties to require exclusive venue for their disputes in Craven County, North Carolina. "A forum selection clause is permissive unless it contains specific language of

exclusion." BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin., 884 F.3d 463, 472 (4th Cir. 2018). "A typical forum-selection clause might read: 'Both parties agree that only the New York Courts shall have jurisdiction over this contract and any controversies arising out of this contract.'" Johnston Cty. v. R.N. Rouse & Co., 331 N.C. 88, 93 (1992) (emphasis added). Accordingly, although the North Carolina Supreme Court has not expressly addressed the issue, "[m]andatory forum selection clauses recognized by [North Carolina] appellate courts have contained words such as 'exclusive' or 'sole' or 'only' which indicate that the contracting parties intended to make jurisdiction exclusive." Capital Bank, N.A. v. Cameron, 231 N.C. App. 326, 330–31 (2013) (quotations omitted).

Here, the asserted forum selection clauses do not contain words such as "exclusive," "sole," or "only" to indicate that the parties intended to make venue exclusive in Craven County, North Carolina. As noted, the alleged Independent Consulting Agreement forum clause states: "Venue for any action, whether at law or in equity, shall be in Craven County, North Carolina." (Compl. Ex. C (DE 1-1) at 61). The Employee Lease Agreement forum clause states: "All controversies arising from this Agreement shall be resolved in Craven County, North Carolina." (Compl. Ex. D (DE 1-1) at 65). Because they do not contain words such as "exclusive" "sole" or "only," they are permissive of venue in Craven County, North Carolina, but they do not preclude venue in Kentucky. See R.N. Rouse, 331 N.C. at 93; see Capital Bank, 231 N.C. App. at 330; BAE Syst., 884 F.3d at 472.

Plaintiffs suggest that use of the words "shall be" are sufficient to render the language of the clauses mandatory rather than permissive. However, "the use of 'shall' in the clause does not render it mandatory; . . . the use of 'shall' in a forum selection clause is not dispositive, because, in context, the clause may still permit jurisdiction in one court but not prohibit jurisdiction in another." BAE

Syst., 884 F.3d at 472; cf. Perkins v. CCH Computax, 333 N.C. 140, 141 (1992) (finding mandatory clause stating "Any action relating to this Agreement shall only be instituted in courts in Los Angeles County, California") (emphasis added), and Bartels by & through Bartels v. Saber Healthcare Grp., LLC, 880 F.3d 668, 671–72 (4th Cir. 2018) (finding clause mandatory stating: "the county in which the Facility is located shall be the sole and exclusive venue for any dispute between the parties), with Mark Grp. Int'l, Inc. v. Still, 151 N.C. App. 565, 568 (2002) (holding clause permissive, where "the provision directs only that disagreements and disputes 'shall finally be settled,' not that 13th Judicial District Court of Hillsborough County Florida shall have 'sole' or 'exclusive' jurisdiction") (emphasis added).

Thus, the asserted forum selection clauses are not enforceable to require or create a presumption in favor of litigation in this district. In any event, even if the venue provision in the Employee Lease Agreement is enforceable as an exclusive venue provision for the disputes covered by that agreement, it is not sufficient to overcome the first-filed rule and balance of factors in favor of venue in Kentucky, due to all the remaining circumstances set forth herein.

Finally, the court considers remaining public interest factors bearing upon venue. The court finds the court congestion factor to be neutral. Choice of law also is neutral, where some claims in the two lawsuits now pending may be resolved with Kentucky law and some claims may be resolved with North Carolina law. There is no indication that choice of law for common law claims, such as breach of contract, fraud, or unjust enrichment, will make a material difference in the outcome of analysis of the claims. The "local interest in having localized controversies decided at home" Atl. Marine, 571 U.S. at 63, also cuts both ways, where there is a local interest in the Kentucky business operations and transactions of defendants and there is also a local interest in the North Carolina

business operations and transactions of plaintiffs.

In sum, plaintiffs have not satisfied a "showing of balance of convenience in favor of the second action." Ellicott, 502 F.2d at 180 n. 2. Thus, the first-filed rule compels the court to transfer venue of the instant action to the Western District of Kentucky. In addition, and independently of the first-filed rule, the court finds in its discretion that weighing the § 1404(a) factors compels the same result. Although defendants Heartland and Graceland did not join in the motion to transfer venue filed by the remaining defendants, the court in its discretion finds that transfer of the case in its entirety to be in the same district as the Kentucky case comports with the § 1404(a) factors. Therefore, defendant's alternative motion to transfer in accordance with the first-filed rule and § 1404(a) is granted.

B.    Remaining motions

In light of the court's venue determination, defendants' motion to dismiss for lack of personal jurisdiction is denied as moot. The motions to quash and motions to dismiss for failure to state a claim brought by defendant Graceland and defendants USASF, Heartland, Christopher Burnett, Daniel Burnett, and CEB, are denied without prejudice to reassertion in the Western District of Kentucky, which will be in a better position to take up the issues raised by those motions in the context of the overall litigation in that court.

CONCLUSION

Based on the foregoing, the court orders as follows:

1)    The motion (DE 26) to dismiss or, in the alternative, motion to transfer venue to the Western District of Kentucky by defendants USASF, Christopher Burnett, Daniel Burnett, and CEB is GRANTED.

24

2)    This case is hereby TRANSFERRED to the United States District Court for the Western District of Kentucky in accordance with the court's rulings herein and 28 U.S.C. § 1404(a).

3)    In light of the court's venue determinations, the motion (DE 24) to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), by defendants USASF, Christopher Burnett, Daniel Burnett, and CEB is DENIED AS MOOT.

4)    The remaining motions to dismiss (DE 15, 24) and motions to quash (DE 51, 54) are DENIED WITHOUT PREJUDICE.

5)    The clerk is DIRECTED to transmit a certified copy of this order and the case file to the Clerk of the Court for the United States District Court for the Western District of Kentucky, in Paducah, Kentucky.

SO ORDERED, this the 5th day of March, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge